UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------x
UNITED STATES OF AMERICA           :
                                   :     **MEMORANDUM OPINION**
                                   :     **AND ORDER**
v.                                 :
                                   :     17 CR 341 (VB)
CHRISTOPHER VON STEIN,             :
                    Defendant.     :
------------------------------------------------------x

In separate filings dated March 25 and April 16, 2018 (Docs. ##93, 95), pro se defendant Christopher Von Stein moves for a new trial pursuant to Fed. R. Crim. P. 33.[1] For the reasons set forth below, the motion is DENIED.

A motion for a new trial should be granted only if the Court has a "real concern that an innocent person may have been convicted." United States v. McCourty, 562 F.3d 458, 475 (2d Cir. 2009). The Court has no such concern here. In fact, the proof of Von Stein's guilt – which included numerous text messages sent by him to his ex-girlfriend Jaimee Blazejewski threatening to injure and kill her (Tr. 151-52), Ms. Blazejewski's credible testimony that the text messages made her feel "very scared" and "concerned for my life and my kids" (Tr. 153), and the testimony of a Verizon witness (corroborated by various Verizon records) that because Ms. Blazejewski was a Verizon customer all of the pertinent text messages traveled through a Verizon text message "switch" located in New Jersey to Ms. Blazejewski's cell phone (Tr. 106-14) – was overwhelming. Moreover, Von Stein had a fair trial – among other things, he called eight witnesses of his own, including himself, his 14-year old daughter Kassandra Von Stein, several character witnesses, and two law enforcement officers who investigated this case – and

---

[1] Defendant previously moved for a new trial following the jury's verdict on March 23, 2018, on the ground that he should have impeached his own witness, which was denied on the record. (Tr. 625). In consideration of defendant's pro se status, the Court sua sponte grants defendant leave to file this second motion for a new trial.

1

the jury was properly instructed. To grant defendant's motion would require the Court to find "it would be a manifest injustice to let the guilty verdict stand." United States v. Sanchez, 969 F.2d 1409, 1414 (2d Cir. 1992). Under the circumstances here, it would be a manifest injustice not to let the guilty verdict stand.

In the instant motion, Von Stein makes what boils down to two arguments: (i) that he did not receive notes of interviews of Ms. Blazejewski and Kassandra Von Stein until March 21, 2018, after the second day of trial – which was before Kassandra testified as a defense witness but after Ms. Blazejewski testified as a government witness – and that when he made that assertion at trial, he was "called a liar" by the prosecutor; and (ii) that he did not receive subpoena returns from Verizon, AT&T, and the Cattaraugus County Family Court. Neither argument has any merit.

First, as to the Blazejewski and Kassandra notes, the government has produced documentary evidence that these notes were sent by Federal Express to Von Stein at the Metropolitan Detention Center ("MDC") on March 9, 2018 (the day after the interviews occurred and ten days before the trial commenced on March 19, 2018), and received at MDC on March 12, 2018. (Gov't Br. Ex. C). Von Stein has produced no evidence to the contrary. The notes were also emailed on March 9 to standby counsel Bruce D. Koffsky, Esq. (Gov't Br. Exs. D-1, D-2). The government plainly fulfilled its obligation under 18 U.S.C. § 3500 with respect to the Blazejewski notes, which constituted 3500 material because Ms. Blazejewski was a government witness.

However, even if Von Stein did not receive the Blazejewski notes until after she testified, there is nothing in the notes that would warrant a new trial. Von Stein points to a portion of the Blazejewski notes relating to an altercation in January 2011 (six years before the threatening text

messages were sent) in which Ms. Blazejewski said she pushed Von Stein after he had yelled at her to get Kassandra to school, in response to which Von Stein pushed Ms. Blazejewski back onto a bed.  There is nothing new about this information – Von Stein was involved in the 2011 altercation and thus already knew Ms. Blazejewski had pushed him.  More importantly, whether Ms. Blazejewski did or did not push Von Stein in 2011 is plainly irrelevant to whether Von Stein knowingly and intentionally sent the threatening text messages to Ms. Blazejewski in 2017.  Indeed, neither the government nor Von Stein questioned Ms. Blazejewski about the 2011 incident at trial, and, in any event, in light of the overwhelming evidence of Von Stein's guilt – including the threatening text messages themselves – this information could not possibly have changed the outcome of the trial.

Likewise, the timing of Von Stein's receipt of the Kassandra notes is of no consequence.  Kassandra was not a government witness; therefore, the notes do not constitute 3500 material and the government was not even required to provide them to Von Stein.  And even if Von Stein did not receive the notes until March 21, that was before Kassandra testified as a defense witness, and certainly Von Stein had every opportunity to use the notes to question his own witness.  Indeed, Von Stein does not identify any information in the notes that he did not already know or was unable to make use of at trial.  Most importantly, as with the Blazejewski notes, nothing in the Kassandra notes could possibly have changed the outcome of the trial.

Von Stein's claim that he was "called a liar" by the prosecutor when he complained he had not received the Blazejewski and Kassandra notes until March 21 (after the second day of trial), is not accurate.  In fact, the prosecutor did not call Von Stein a "liar"; rather, she said it was "not true" Von Stein had gotten the notes the day before.  (Tr. 443).  Given that the prosecutor knew she had sent the notes to Von Stein by Federal Express on March 9 (the day

3

after the interviews were conducted), her comment was either entirely correct or, if Von Stein did not receive the notes until March 21, entirely understandable and certainly not a deliberate falsehood. In any event, the Court instructed the jury to disregard the colloquy between and among Von Stein, the prosecutor, and the Court. And more importantly, as set forth above, the Blazejewski and Kassandra notes could not possibly have changed the outcome of the trial.

Second, Von Stein's complaints about the subpoena returns are almost certainly false. Based on the Court's own observations, as well as Mr. Koffsky's letter to the Court (Doc. #101), submitted in response to the Court's suggestion that Mr. Koffsky might wish to respond to Von Stein's assertions about subpoenas (Doc. #96), Mr. Koffsky did all he could possibly do as standby counsel to assist Von Stein – who, according to the Court's personal observations as well as much of the testimony Von Stein himself introduced at trial, is a difficult, demanding, and disagreeable person. In light of the foregoing, the Court credits Mr. Koffsky's representations that he timely served subpoenas addressed to Verizon, AT&T, and the Cattaraugus County Family Court, as requested by Von Stein; that the subpoenaed materials were produced to the Court's Clerk's Office before trial; and that Von Stein was so notified before trial.

Moreover, nothing in Von Stein's Rule 33 motion (or in any other of his post-trial filings) explains how the information in the subpoena returns is material and would have altered the outcome at trial. As to Verizon, the government proved beyond any doubt that the threatening text messages traveled through the Verizon text message switch in New Jersey, and Von Stein has not explained how the Verizon records he sought would have undermined the government's proof. As to AT&T, because the text messages traveled interstate through the Verizon network, it is legally irrelevant how they may have traveled through the AT&T network. And as to the

4

Cattaraugus County Family Court records, Von Stein does not explain how these records would be relevant or admissible; and certainly nothing in these records could possibly undermine the proven fact that Von Stein knowingly and willfully sent the threatening text messages to Ms. Blazejewski. In other words, these records could not possibly have changed the outcome of the trial.

The motion for a new trial is DENIED.

Sentencing will proceed as scheduled on June 29, 2018, at 11:30 a.m.

The Clerk is instructed to mail a copy of this Memorandum Opinion and Order to defendant Christopher Von Stein at the address on the docket.

Dated: June 21, 2018
       White Plains, NY

SO ORDERED:

_____
Vincent L. Briccetti
United States District Judge